**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
**STEPHANIE A. GALLAGHER**
**UNITED STATES MAGISTRATE JUDGE**

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

December 18, 2014

LETTER TO COUNSEL

> RE:   *Stephen Scott v. Commissioner, Social Security Administration*;
>          Civil No. SAG-13-3173

Dear Counsel:

On October 25, 2013, Plaintiff Stephen Scott petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment. (ECF Nos. 15, 19). I find that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2014). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny Plaintiff's motion and grant the Commissioner's motion. This letter explains my rationale.

Mr. Scott protectively filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 5, 2009. (Tr. 75–76, 136–43). He alleged a disability onset date of September 28, 2009. (Tr. 136, 140). His claims were denied initially and on reconsideration. (Tr. 79–83, 87–90). A hearing was held on January 17, 2012, before an Administrative Law Judge ("ALJ"). (Tr. 44–74). Following the hearing, the ALJ determined that Mr. Scott was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 26–41). The Appeals Council denied Mr. Scott's request for review, (Tr. 1–5), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Scott suffered from the severe impairments of diverticulitis, status post abdominal surgery with small bowel obstruction, degenerative disc disease, depression, bipolar disorder, anxiety disorder, and history of substance abuse. (Tr. 31). Despite these impairments, the ALJ determined that Mr. Scott retained the residual functional capacity ("RFC") to "perform light work as defined in 20 CFR 404.1567(c) and 416.967(c) except that he would require simple, unskilled jobs, with limited public contact due to symptoms of pain and depression." (Tr. 33). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Scott could perform jobs existing in significant numbers in the national economy and that therefore he was not disabled. (Tr. 40–41).

Mr. Scott raises two arguments on appeal, both of which fault the ALJ's assessment of the opinions of his treating physicians. Each argument lacks merit and is addressed below.

*Stephen Scott v. Commissioner, Social Security Administration*
Civil No. SAG-13-3173
December 18, 2014
Page 2

First, Mr. Scott argues that the ALJ erred in evaluating the opinions of his treating psychologist, Dr. Kaplan. Specifically, he claims that the ALJ should have credited Dr. Kaplan's two psychological assessments, which indicate worsening symptoms. The Fourth Circuit set forth parameters for evaluating medical opinions of treating physicians in *Craig*, 76 F.3d at 590, which were later refined by amendments to 20 C.F.R. §§ 404.1527 and 416.927. *See Pitman v. Massanari*, 141 F. Supp. 2d 601, 608 (W.D.N.C. 2001). When a medical opinion is from a "treating source," it is given controlling weight only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In this case, the ALJ determined that Dr. Kaplan's opinions were not entitled to controlling weight because they were not supported by medical evidence and were inconsistent with the other evidence. (Tr. 39). The ALJ stated that "Dr. Kaplan's only documented treatment record in November 2011 did not indicate any abnormal mental findings . . . ," which, Mr. Scott claims, indicates that the ALJ did not consider Dr. Kaplan's treatment records from February 2011 to October 2011. Pl.'s Mem. 17. However, the record before the ALJ included only one treatment note from Dr. Kaplan, who did not begin treating Mr. Scott until May 20, 2011. (Tr. 484). Instead, each treatment note cited by Mr. Scott is from Sharon Nayfack, a Licensed Clinical Social Worker. Pl.'s Mem. 18–20; (Tr. 421–37). The one treatment note from Dr. Kaplan that was present in the record before the ALJ was an October 26, 2011, mental health follow-up that listed Mr. Scott's medications and vitals, but did not include any notes. (Tr. 403). Thus, Mr. Scott has not identified any evidence undermining the ALJ's determination that Dr. Kaplan's opinions were not supported by medical evidence, and the ALJ's only error was his statement that the note from Dr. Kaplan was dated November 2011.

Mr. Scott also contends that the ALJ should not have discredited Dr. Kaplan's assessments on the basis of an earlier-dated State agency assessment. Pl.'s Mem. 16–17. However, the Commissioner must consider, and is entitled to rely on, opinions from non-examining doctors. *See* SSR 96-6p, at *3 ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."). The fact that the State agency physician's report was prepared before Dr. Kaplan began treating Mr. Scott is certainly relevant, but it does not undermine the validity of the State agency physician's conclusions as of the time they were rendered. It is clear from the opinion that the ALJ considered the subsequent medical evidence of record, particularly in light of the fact that his RFC assessment was more limited than the opinion of the State agency physician.

Mr. Scott submitted additional treatment notes from Dr. Kaplan to the Appeals Council ("AC") as "new and material evidence" not considered by the ALJ. Mr. Scott argues that the AC's evaluation of the additional treatment notes from Dr. Kaplan was inadequate. The AC must review additional evidence if it is "(a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dept. of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991). Evidence is "new" if "it is not duplicative or cumulative." *Id.* at 96. "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* "[T]he regulatory scheme does not require the [AC] to do anything

*Stephen Scott v. Commissioner, Social Security Administration*
Civil No. SAG-13-3173
December 18, 2014
Page 3

more than what it did in this case, *i.e.*, consider new and material evidence . . . in deciding whether to grant review." *Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir. 2011) (internal quotation marks omitted). The AC is not required to take any specific action in response to new and material evidence, and it is not required to provide a detailed explanation of its evaluation. *Id.* In this case, the "new" evidence included treatment notes documenting three appointments with Dr. Kaplan: (1) a May 20, 2011, initial visit; (2) an August 23, 2011, follow-up; and (3) a January 10, 2012, follow-up. (Tr. 463–64, 455, 445). The AC made that evidence part of the record, but explained that after considering whether the ALJ's "conclusion is contrary to the weight of evidence currently of record," it did not find that the additional evidence provided a basis for changing the ALJ's decision. (Tr. 1–2, 5). The record thus demonstrates the AC's receipt and consideration of the additional evidence. Moreover, I do not find that the additional evidence adds credibility to the extreme functional limitations expressed in the opinions of Dr. Kaplan. Mr. Scott's initial visit with Dr. Kaplan indicates symptoms of depression and anxiety with a GAF of 40. (Tr. 463–64). However, on the first follow-up Mr. Scott was "doing well" and was assigned a GAF of 50, and at the later follow-up, Mr. Scott indicated that his mental impairments were well controlled with medication, and he was assigned a GAF of 55. (Tr. 455, 445). Thus, contrary to Mr. Scott's assertions, Dr. Kaplan's treatment notes undermine the extreme limitations indicated in his opinions, and indicate improving, rather than worsening, symptoms. Accordingly, I find that the ALJ's evaluation of Dr. Kaplan's opinions is supported with substantial evidence, and that the AC did not err in declining review the ALJ's decision after considering the new treatment notes from Dr. Kaplan.

Second, Mr. Scott argues that the ALJ should not have discredited the two "Medical Assessment of Ability to do Work Related Activities (Physical)" forms completed by his treating physician, Dr. Arjadon. If a treating source's medical opinion is not assigned controlling weight, then, in determining the weight to give the opinion, the ALJ should consider: (1) the length of the treatment relationship and its nature and extent; (2) the supportability of the opinion; (3) the opinion's consistency with the record as a whole; (4) whether the source is a specialist; and (5) any other factors that tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). In this case, the ALJ discounted Dr. Arjadon's opinions because they were (1) based solely on Mr. Scott's subjective complaints, (2) inconsistent with the medical evidence as a whole, (3) inconsistent with one another, and (4) based partially on issues reserved to the Commissioner. (Tr. 38). Specifically, the ALJ referenced a treatment note from the same date as the opinions, which indicated that Mr. Scott denied experiencing any pain symptoms. (Tr. 38, 324–25). All of Dr. Arjadon's explanations for his opinions were, indeed, based on Mr. Scott's subjective complaints. *See* (Tr. 307–09). Moreover, Mr. Scott has not identified any specific treatment notes from Dr. Arjadon or any other treating physician to support the limitations Dr. Arjadon preferred. Earlier in his opinion, the ALJ provided a thorough review of the medical evidence he found undermined Mr. Scott's claims concerning his inability to perform work activities. (Tr. 36). That evidence included a treatment note from one month prior to Dr. Arjadon's completion of the opinion forms, in which Mr. Scott declined the treatment recommendations of Dr. Spinuzza, a treating specialist, stating that he was going to live with his symptoms. (Tr. 36, 295). After comparing Dr. Arjadon's opinions, although they are certainly not identical to one another, they are consistent in many respects. *See* (Tr. 307–12). However,

*Stephen Scott v. Commissioner, Social Security Administration*
Civil No. SAG-13-3173
December 18, 2014
Page 4

in light of the additional factors that the ALJ cited in support of his evaluation of Dr. Arjadon's opinion, any error in his statement that the opinions contradict each other is harmless. Accordingly, I find that the ALJ provided substantial evidence in support of his assessment of Dr. Arjadon's opinion.

For the reasons set forth herein, Mr. Scott's Motion for Summary Judgment (ECF No. 15) is DENIED and Defendant's Motion for Summary Judgment (ECF No. 19) is GRANTED. The clerk is directed to CLOSE this case.

Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge